## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| BULK BARN FOODS LIMITED,<br><br>       Plaintiff,<br><br>  v.<br><br>BULK NATION, LLC;<br>BULK NATION BRANDON, LLC;<br>BULK NATION COLONIAL, LLC;<br>BULK NATION FRANCHISING, LLC;<br>MR. WALT SPIVAK; and<br>MR. CLAY DONATO,<br><br>      Defendants. | Civil Action No. _____<br><br><br>6:14-cv-1645-ORL-31KRS |

## COMPLAINT FOR UNFAIR COMPETITION PURSUANT TO 15 U.S.C. § 1125(a)

Bulk Barn Foods Limited ("Bulk Barn" or "Plaintiff") brings this action for unfair competition in the nature of trade dress infringement pursuant to 15 U.S.C. § 1125(a) against Bulk Nation, LLC; Bulk Nation Brandon, LLC; Bulk Nation Colonial, LLC; Bulk Nation Franchising, LLC; Mr. Walt Spivak; and Mr. Clay Donato (collectively, "Defendants").

## THE PARTIES

1.     Plaintiff Bulk Barn is a Canadian limited company, maintaining its corporate headquarters at 320 Don Hillock Drive, Aurora, Ontario L4G 0G9.

2.     Upon information and belief, defendant Bulk Nation, LLC is a Delaware limited liability corporation, with its principal place of business located at 4039 S. Tamiami Trail, Sarasota, Florida 34231.

3.     Upon information and belief, Bulk Nation, LLC is the parent company of defendants Bulk Nation Brandon, LLC; Bulk Nation Colonial, LLC; and Bulk Nation

Franchising, LLC, and has material control or oversight or involvement in the business and operations of some or each of the three "Bulk Nation" stores located and doing business at (a) 4030 South Tamiami Trail, Sarasota, Florida 34231 (which location, upon information and belief, recently closed, but is being relocated); (b) 2426 W. Brandon Blvd., Brandon, Florida 33511; and (c) 2522 E. Colonial Dr., Orlando, Florida 32803 (the "Bulk Nation stores").

4.      Upon information and belief, defendant Bulk Nation Brandon, LLC is a Florida limited liability corporation, with its principal place of business located at 1605 Main Street, Suite 1112, Sarasota, Florida 34236.

5.      Upon information and belief, Bulk Nation Brandon, LLC is related to defendants Bulk Nation, LLC; Bulk Nation Colonial, LLC; and Bulk Nation Franchising, LLC, and has material control or oversight or involvement in the business and operations of some or each of the three Bulk Nation stores.

6.      Upon information and belief, defendant Bulk Nation Colonial, LLC is a Florida limited liability corporation, with its principal place of business located at 1605 Main Street, Suite 1112, Sarasota, Florida 34236.

7.      Upon information and belief, Bulk Nation Colonial, LLC is related to defendants Bulk Nation, LLC; Bulk Nation Brandon, LLC; and Bulk Nation Franchising, LLC, and has material control or oversight or involvement in the business and operations of some or each of the three Bulk Nation stores.

8.      Upon information and belief, defendant Bulk Nation Franchising, LLC is a Florida limited liability corporation, with its principal place of business located at 1605 Main Street, Suite 1112, Sarasota, Florida 34236.

9.      Upon information and belief, Bulk Nation Franchising, LLC is related to defendants Bulk Nation, LLC; Bulk Nation Brandon, LLC; and Bulk Nation Colonial, LLC, and has material control or oversight or involvement in the business and operations of some or each of the three Bulk Nation stores.

10.      Upon information and belief, defendant Walt Spivak is the Managing Member and President of one or more of Bulk Nation, LLC; Bulk Nation Brandon, LLC; Bulk Nation Colonial, LLC; and Bulk Nation Franchising, LLC, maintaining an office at 1605 Main Street, Suite 1112, Sarasota, Florida 34236.

11.      Upon information and belief, Mr. Spivak has directed and controlled the conduct of Bulk Nation, LLC; Bulk Nation Brandon, LLC; Bulk Nation Colonial, LLC; and Bulk Nation Franchising, LLC, which is the subject of this complaint.

12.      Upon information and belief, defendant Clay Donato is the Manager or directing officer of one or more of Bulk Nation, LLC; Bulk Nation Brandon, LLC; Bulk Nation Colonial, LLC; and Bulk Nation Franchising, LLC, maintaining an office at 1605 Main Street, Suite 1112, Sarasota, Florida 34236.

13.      Upon information and belief, Mr. Donato has directed and controlled the conduct of Bulk Nation, LLC; Bulk Nation Brandon, LLC; Bulk Nation Colonial, LLC; and Bulk Nation Franchising, LLC, which is the subject of this complaint.

## JURISDICTION AND VENUE

14.      This is an action for unfair competition in the nature of trade dress infringement arising under the *Lanham Act*, 15 U.S.C. § 1051, *et seq*.

15.      This Court has subject matter jurisdiction in this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

16.     Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2), 28 U.S.C. § 1391(c), and 28 U.S.C. § 1391(d). Defendants have committed acts of unfair competition in the nature of trade dress infringement in this District and elsewhere in commerce.

## FACTUAL BACKGROUND

17.     Bulk Barn is Canada's largest bulk food retailer.

18.     Established in 1982, Bulk Barn has successfully expanded to approximately 230 stores across Canada, including stores in areas of Canada adjacent to the United States border, all of which offer customers a wide assortment of products for an exciting, unique shopping experience.

19.     Bulk Barn has suppliers not only in Canada, but in the United States as well, including Florida. Bulk Barn regularly transacts business with its U.S. suppliers.

20.     Additional information about Bulk Barn and the nature and extent of its business can be found at www.bulkbarn.com.

21.     Bulk Barn has developed, through extensive expenditure of time and resources, an inherently distinctive look and feel to its advertising and its stores, so as to deliver to customers a distinctive, recognizable and consistent presentation.

22.     Bulk Barn began developing the format of this distinctive and consistent presentation from its inception in 1982, and has worked to improve on it over the years through the expenditure of substantial time and resources, resulting in the generation of widespread recognition and goodwill in the marketplace among both consumers and those in the trade.

23.     Customers entering a Bulk Barn store know that they can expect exceptional quality and customer service, delivered in a consistent and pleasing shopping environment.

24.     Because of the appearance of the Bulk Barn storefront, the layout of the Bulk Barn stores, and the signage, displays, lighting layout, racking and vending apparatuses within the stores, customers entering a Bulk Barn store instantly know they are in a Bulk Barn store, as well as how to navigate a Bulk Barn store.  *See*, *e.g.*, ¶¶ 40, 41, 49, *infra*.

25.     The trade dress of Bulk Barn stores and Bulk Barn's advertising is inherently distinctive, and has acquired commercial strength and distinctiveness through extensive and substantially exclusive use.  As such, the Bulk Barn stores' trade dress has achieved secondary meaning.

26.     The products and services of both Bulk Barn and Defendants are sold and promoted through overlapping trade channels, to the same and overlapping classes of purchasers.

27.     It is a widely known fact that many people from Canada vacation or reside in Florida for significant periods of time each year.

28.     A recent article in the *National Post*, Vol. 16, No. 261 (September 17, 2014, attached as Exhibit A) notes that: "Lured mostly by cheap prices, Canadians spent $2.2-billion on Florida real estate last year, easily making them the Sunshine State's No. 1 international buyer of real estate."

29.     Many U.S. households, particularly in Florida and in areas of the U.S. adjacent the U.S. - Canadian border, are familiar with Bulk Barn stores and the Bulk Barn name.

30.     Bulk Barn's Facebook page boasts numerous "likes" from fans who state they are from the United States.

31.     Bulk Barn's Twitter account boasts followers who state they are from the United States.

32.     Bulk Barn sponsors the Ottawa Senators and Toronto Maple Leaf N.H.L. hockey teams.  As a result of these sponsorships, Bulk Barn's logo is prominently displayed on the teams' respective penalty box sections.  When these teams' games are televised in the U.S., television coverage within the United States captures Bulk Barn's name and  logo, which are then viewed by many hockey fans in the United States, reinforcing familiarity with the Bulk Barn name and stores.  Moreover, both teams play the Tampa Bay Lightning N.H.L. hockey team in the Middle District of Florida.

33.      On information and belief, Defendants are engaged in an intentional effort to hold themselves out to shoppers and others as the United States branch, or affiliate, or franchisee of Bulk Barn.

34.     Defendants first began operations no earlier than 2013 (*see* Exhibit B hereto, a printout from http://www.bulknationusa.com/corporate, accessed October 7, 2014), and originally, did not lay out their store(s) or advertise in such a way as to copy Bulk Barn's trade dress (other than the obvious similarity of their names).

35.     On or about December 4, 2013, Defendants, under the direction and control of the individual Defendants, began to engage in a concerted effort to intentionally, and in bad-faith, copy Bulk Barn's trade dress, despite the fact that Bulk Barn has itself been in operation since 1982 and is the original user of the Bulk Barn trade dress as set forth above (*see* Exhibit C, article from the *Tampa Bay Times*, printed from http://www.tampabay.com/news/business/bulk-nation-shoppers-can-bag-savings/2155494, accessed October 7, 2014, and noting that "Brandon's Bulk Nation is just the second opened by president Clay Donato. A Canadian-born former pro tennis player and product of Bradenton's IMG Academy, Donato opened the first store nine

months ago in Sarasota.  <u>He's seen the concept work in Canada for companies such as Bulk Barn</u>.") (emphasis added).

36.     Defendants, under the direction and control of the individual Defendants, have made deliberate design changes, and have even approached Bulk Barn's vendors to effect those design changes, emphasizing Defendants' intentional, bad-faith efforts to copy Bulk Barn's trade dress, and trade upon Bulk Barn's considerable recognition and goodwill among the purchasing public, particularly in Florida and elsewhere in the United States.

37.     Defendants, under the direction and control of the individual Defendants, have taken steps to imitate the trade dress previously adopted and made popular by Bulk Barn and well-known to (a) Canadians, including those who spend significant time in Florida, and well-known also to (b) U.S. citizens in contiguous areas who work in Canada, visit Canada regularly to shop, and are exposed to Canadian-based advertising which is directed to persons on both sides of the border.

38.     Defendants, under the direction and control of the individual Defendants, are intentionally copying the look and feel of Bulk Barn's trade dress, including its advertising, storefront, the layout of the Bulk Barn stores, and the signage, displays, racking, vending apparatuses, product containers, and lighting format within Bulk Barn stores, in an effort to trade upon and profit from the extensive goodwill Bulk Barn has generated through its extraordinary expenditure of time and resources.

39.     Defendants, under the direction and control of the individual Defendants, have in fact <u>duplicated</u> in their stores many of Bulk Barn's distinctive and recognizable fixtures, including pedestal bag dispensers, racking, shelving, vending apparatuses, product containers, checkout-stations, and other items.

40.     Even the general layout of Defendants' stores, including their ceiling lighting and the position of the cake-pan wall, is designed to copy the distinctive general layout of Bulk Barn's stores.

41.     Numerous other examples of intentional, misleading, and confusing copying of Bulk Barn's distinctive trade dress are shown in Defendants' stores.  By way of example only:

> A.     Bulk Barn uses certain copy messaging on wall signs.  For example, some signs read, sequentially, "tell a friend about bulk barn," "together we can make a difference[;] buy in bulk and help save the environment," and "Canada's largest bulk food retailer, saving our customers money since 1982."  Defendants have copied either verbatim, or almost verbatim, this messaging, with signs that read, sequentially, "TELL A FRIEND ABOUT BULK NATION," "TOGETHER WE CAN MAKE A DIFFERENCE[;] BUY IN BULK AND HELP SAVE THE ENVIRONMENT," and "SAVING YOU MONEY."



*(above, sample of Bulk Barn's copy messaging on wall signs)*



*(above, sample of Defendants' copy messaging on wall signs)*

\*\*\*

B.    Bulk Barn's storefronts use a series of different product images in a collage effect to coat selected windows in the stores.  This treatment is complemented with window glazing, including a horizontal red stripe with the "Bulk Barn" logo, and horizontal white bars below.  Defendants are duplicating this format in a way that is designed to cause customer confusion.



*(above, sample of a Bulk Barn storefront)*



*(above, sample of Defendants' storefront)*

\*\*\*

C.    Bulk Barn's and Defendants' "No Snacking" decals are nearly identical, and contain the identical text:



*(above, Bulk Barn's "No Snacking" decal)*



*(above, Defendants' "No Snacking" decal)*

\*\*\*

D.     Defendants have copied tub banners used by Bulk Barn.  For instance, Bulk Barn uses "why pay for the package?  buy in bulk & save." Defendants have copied the language of this banner verbatim, using the same red-and-white colors.  Bulk Barn also uses "saving our customers money since 1982."  Defendants have copied this text verbatim, omitting only "since 1982."



*(above, sample of Bulk Barn's tub banners)*



*(above, sample of Defendants' tub banners)*

***

E.      Bulk Barn uses a rectangular, bulk barrel price sign which has three parts. In order, from left to right, they are:  (1) a description of the product; (2) nutritional information; and (3) the product name, price per pound, and price per 100g.  The pricing component of the sign is by far the largest portion of the sign, with the price per 100g printed boldly in red, surrounded by a yellow filled rectangle.  The primary colors of the signs are white and red, with red pricing information, unless the product is organic, in which case the signs are primarily green and white, with red pricing information.

Defendants use a rectangular, bulk barrel price sign which has the same three parts as Bulk Barn's sign, but in reverse order, *i.e.*: (1) the product name, price per pound, and price per ounce; (2) product description; and (3) nutritional information.  As with Bulk Barn, the pricing component of the sign is the largest portion of the sign, with the price per ounce printed in red, surrounded by a yellow filled rectangle.  The primary colors of the signs are white and blue, with red pricing information, unless the product is organic, in which case the signs are primarily green and white, with red pricing information.



*(above, sample of Bulk Barn's barrel price sign)*



*(above, sample of Defendants' barrel price sign)*

\*\*\*

F.      Bulk Barn uses "SPECIAL" cappers to designate products on sale. Defendants have copied these cappers in both color and format so they are confusingly similar to those of Bulk Barn.



*(above, sample of Bulk Barn's "SPECIAL" capper)*



*(above, sample of Defendants' "SPECIAL" capper)*

\*\*\*

G.     Bulk Barn uses hanging aisle signs throughout its store aisles, generally depicting an enticing picture of product category(ies) available in that aisle.  Defendants have copied the general format of the Bulk Barn aisle signs to produce the same feel as those in Bulk Barn stores.



*(above, sample of Bulk Barn's hanging aisle signs)*



*(above, sample of Defendants' hanging aisle signs)*

***

H.    Bulk Barn has invested extensively in developing the unique manner in which its products are stored and displayed for sale to the public, from the containers for products, to the shelving and racking on which they are displayed.  Defendants are engaged in extensive and intentional copying of Bulk Barn's displays.  For example, the "totes" section of Bulk Barn's stores contains 45 totes on racking designed for Bulk Barn.  Defendants have copied this design, down to the number of totes in which products are displayed for sale.



*(above, sample of Bulk Barn's "totes" section)*



*(above, sample of Defendants' "totes" section)*

\*\*\*

I.     Also, in Bulk Barn stores, oils are generally displayed above "wet pails," with honey displayed to the right of both.  Defendants are copying this format.



*(above, sample of Bulk Barn's oil/"wet  pails"/honey display)*



*(above, sample of Defendants' oil/"wet  pails"/honey display)*

\*\*\*

J.      Bulk Barn stores generally employ the same lighting pattern, with lights running perpendicular to the stores' gondolas, with one row of lighting for every two rows of ceiling tiles.  Defendants are copying this format.



*(sample of Bulk Barn's ceiling lighting)*



*(sample of Defendants' ceiling lighting)*

***

K.      Even the "Bulk Nation" name harkens to the "Bulk Barn" name, which has existed for decades.

42.      Defendants' use of Bulk Barn's distinctive trade dress was and is without Bulk Barn's license, authorization, or permission.

43.     Confusion, mistake, and deception as a result of Defendants' copying of Bulk Barn's trade dress is likely to occur, and has in fact already occurred in the State of Florida within the Middle District.  Bulk Barn's customers and prospective customers, the trade, and the relevant public are likely to continue to be confused as to the source or sponsorship of Defendants' stores, the affiliation between Bulk Barn and Defendants, and whether Defendants' stores are licenses or franchisees of Bulk Barn, all to the damage and detriment of Bulk Barn and its reputation.

44.     Bulk Barn has received inquiries from Bulk Barn franchisees expressing confusion as to whether Bulk Nation stores represent Bulk Barn locations in the United States. (*See* Exhibit D – photo taken by a Bulk Barn franchisee of a Bulk Nation store, in which the Bulk Barn franchisee expressed confusion as to whether the Bulk Nation store was in fact a Bulk Barn store located in the United States).

45.     When Bulk Barn expands into the United States, as it intends to do, it is likely that customers who are not previously familiar with Bulk Barn's stores will believe that *Bulk Barn* is the one that is copying *Defendants'* trade dress, when in fact the opposite is true.

### COUNT 1
### UNFAIR COMPETITION IN THE NATURE OF TRADE DRESS INFRINGEMENT UNDER 15 U.S.C. §1125(a)

46.     Bulk Barn has long employed a distinctive, consistent and non-functional trade dress.

47.     The trade dress of Bulk Barn's stores and advertising is inherently distinctive, and has acquired distinctiveness and commercial strength, and thus has secondary meaning.

48.     The distinctive design elements of Bulk Barn's stores combine in such a way that the stores and advertising have a distinctive and consistent look and feel that is immediately

recognizable to customers, and is associated exclusively with Bulk Barn.  These design elements combine to serve the source-identifying purpose of creating brand recognition, but seen as a whole, are non-functional.

49.      Among the distinctive design elements of Bulk Barn's stores and advertising copied by Defendants are:

a.      stylized barrel and "totes" price signs
(*Defendants have copied the size, shape, layout, font, color blocking, and other characteristics of these signs to create the same or essentially the same visual impression as those of Bulk Barn*);

b.      stylized "wet pail" price signs
(*Defendants have copied the size, shape, layout, font, color blocking, and other characteristics of these signs to create the same or essentially the same visual impression as those of Bulk Barn*);

c.      stylized spice/coffee/tea price signs
(*Defendants have copied the size, shape, layout, font, color blocking, and other characteristics of these signs to create the same or essentially the same visual impression as those of Bulk Barn*);

d.      stylized "tower bin" price signs
(*Defendants have copied the size, shape, layout, font, color blocking, and other characteristics of these signs to create the same or essentially the same visual impression as those of Bulk Barn*);

e.      stylized "honey tank" price signs
(*Defendants have copied the size, shape, layout, font, color blocking, and other characteristics of these signs to create the same or essentially the same visual impression as those of Bulk Barn*);

f.      stylized "oil and vinegar" price signs
(*Defendants have copied the size, shape, layout, font, color blocking, and other characteristics of these signs to create the same or essentially the same visual impression as those of Bulk Barn*);

g.      "No Snacking" decals (inclusive of copy messaging)
(*Defendants have copied these decals to create the same or essentially the same visual impression as those of Bulk Barn*);

h.      stylized "Special" cappers

*(Defendants have copied the color, format, and other characteristics of these cappers to create the same or essentially the same visual impression as those of Bulk Barn)*;

i.    "tub" banners (inclusive of copy messaging, and primary color content) *(Defendants have used identical and substantially similar copy messaging and color combinations on their tub banners and in their tub banners to create the same or essentially the same visual impression as those of Bulk Barn)*;

j.    wall signs (inclusive of copy messaging) *(Defendants have used identical and substantially similar copy messaging on their wall signs, and formatted them to create the same or essentially the same visual impression as those of Bulk Barn)*;

k.    stylized hanging aisle signs *(Defendants have formatted their hanging aisle signs to create the same or essentially the same visual impression as in Bulk Barn stores)*;

l.    stylized "cake pan rental" signs *(Defendants' copy and overall format of their "cake pan rental signs" creates the same or essentially the same visual impression as those of Bulk Barn)*;

m.    stylized store-front window treatments *(Defendants' format of their store-front window treatments creates the same or essentially the same visual impression as that of Bulk Barn)*;

n.    custom check-out stations *(Defendants' check-out stations create the same or essentially the same visual impression as those of Bulk Barn)*;

o.    "Cake Pan Wall" typically placed on perimeter wall, with slot wall running to the ceiling and a piece of laminate below the slot wall, backing up against the laminate, with two tiers of barrels with acrylic lids on wire bases *(Defendants' "Cake Pan Wall," including identical-looking barrels with acrylic lids on wire bases under the rental pans, creates the same or essentially the same visual impression as that of Bulk Barn)*;

p.    "Totes" section typically located on perimeter wall, carrying a total of 45 custom totes *(Defendants' totes section, including duplicates or near duplicates of Plaintiff's custom totes, custom tote lids, and number of totes, creates the same or essentially the same visual impression as Bulk Barn's)*;

q.     oils generally displayed above "wet pails," with honey displayed to the
       right of both
       (*Defendants also display their oils above "wet pails," with honey
       displayed to the right of both, to create the same or essentially the same
       visual impression as Bulk Barn*);

r.     assorted custom acrylics, bins, tubs, shelving, racking, headers, fixtures,
       bag holders, wire bases, cinnamon stick holders, end gables, lids, and
       millwork
       (*Throughout their stores, Defendants have duplicated, or created near
       duplicates of these assorted custom acrylics, bins, tubs, shelving, racking,
       headers, fixtures, bag holders, wire bases, cinnamon stick holders, end
       gables, lids, and millwork, and laid them out in such a way as to create the
       same or essentially the same visual impression as Bulk Barn*);

s.     distinct ceiling lighting pattern;
       (*Defendants have used a "two ceiling tile, one row of ceiling lighting"
       pattern, to create the same or essentially the same visual impression as
       Bulk Barn*);

t.     beige flooring;
       (*Defendants have used beige flooring to create the same or essentially the
       same visual impression as Bulk Barn*); and

u.     significant use of the colors yellow and red;
       (*Defendants have in their advertising and throughout their stores made
       pervasive use of the colors yellow and red, and color blocking with the
       color blue, which is reminiscent of Bulk Barn's color blocking with the
       color red, to create the same or essentially the same visual impression as
       Bulk Barn*)

among other elements, which are well-known to Defendants.

50.    Defendants are engaged in a bad-faith effort to intentionally and wilfully copy in
their stores the distinctive, overall non-functional and consistent look and feel of Bulk Barn
stores.

51.    The trade dress of Defendants' Bulk Nation stores and advertising so resembles
the trade dress of Bulk Barn's stores and advertising that it is likely to cause confusion, mistake,
or deception among members of the relevant public and trade, and has caused actual confusion as

to the source, sponsorship or affiliation of Defendants' stores, in violation of 15 U.S.C. § 1125(a).

52.     Defendants' use of Bulk Barn's distinctive and non-functional trade dress as complained of herein is likely to continue to cause confusion, mistake, or to deceive as to the source, sponsorship or affiliation of Defendants'  Bulk Nation stores with Bulk Barn, when in fact there is no such affiliation.

53.     Defendants' use of the trade dress which is the subject of this Complaint deprives Bulk Barn of control over its own reputation, has caused actual confusion, and is likely to continue to cause confusion, and has damaged and is likely to continue to cause damage and irreparable injury to Bulk Barn, its reputation, and its goodwill.

54.     Defendants' use of the copied trade dress in its Bulk Nation stores is willful and intentional.

55.     Bulk Barn has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Bulk Barn Foods Limited respectfully requests that this Court:

1.     Enter judgment in favor of Plaintiff and against Defendants on the Complaint;

2.     Permanently enjoin and restrain Defendants, their officers, agents, employees, and all other persons in active concert or participation with Defendants, from:

a.     Using Bulk Barn's protectable trade dress, and any other protectable trade dress which is substantially similar to or otherwise simulates the Bulk Barn trade dress;

b.     Engaging in any other conduct that is likely to cause confusion, mistake, or deception as to the source, sponsorship, or affiliation of their advertising and Bulk Nation stores (and all others that may be hereinafter opened);

3.    Order an accounting of Defendants to determine all profits received from the sale of goods, directly or indirectly, in connection with, advertised, or promoted in any manner, by use of Bulk Barn's trade dress;

4.    Award damages as authorized under 15 U.S.C. §1117;

5.    Award Plaintiff its attorneys' fees, costs, and disbursements pursuant to 15 U.S.C. § 1117; and

6.    Grant such further relief as this Court deems just and appropriate.

Respectfully submitted this 10th day of October 2014.

s/ *Ava K. Doppelt*

Ava K. Doppelt, Esq.
Florida Bar No. 393738
adoppelt@addmg.com
Allen, Dyer, Doppelt, Milbrath
 & Gilchrist, P.A.
255 S. Orange Ave., Suite 1401
Orlando, FL  32801
Telephone:  407-841-2330
Facsimile:  407-841-2343

Of Counsel:
Joshua Kirsch, Esq.
jkirsch@eckertseamans.com
Roberta Jacobs-Meadway, Esq.
rjacobsmeadway@eckertseamans.com
Eckert Seamans Cherin & Mellott, LLC
Two Liberty Place
50 South 16th Street, 22nd Floor
Philadelphia, PA 19102
Telephone: 215-851-8400
Facsimile:  215-851-8383

*Attorneys for Plaintiff*
*Bulk Barn Foods Limited*